IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACEY HAWES, #1467573,

    Plaintiff

        v                      Civil Action No. DKC-17-2598

RICKY FOXWELL, Warden,
LT. EDWARD BLAKE,[1]
LT. WILLIAM CLAYTON,
LT. ALONZO MURPHY, and
CO II DANIEL ARNDT,

    Defendants

***

## MEMORANDUM OPINION

The above-captioned civil rights action alleging the loss of property occurring at the Eastern Correctional Institution ("ECI") was filed by Maryland state prisoner Tracey Hawes.[2] In his unverified complaint, Hawes seeks compensatory damages of $10,000.00 and punitive damages of $750,000.00. Hawes names Defendant ECI Warden Ricky Foxwell, together with four officers, Defendants Blake, Clayton, Arndt and Murphy, for failing to secure his personal property after searching his cell.

Hawes does not contest the propriety of the cell search, nor does he complain about disciplinary sanctions imposed as a result of the contraband uncovered during the search.[3]

---

[1] The Clerk shall amend the docket to reflect the full spelling of the names of Defendants Blake, Clayton, and Murphy.

[2] Hawes currently is housed at Jessup Correctional Institution.

[3] Defendants Blake, Clayton and Arndt conducted the search, which resulted in the recovery of contraband, including a cell phone watch and charging cable. ECF No. 11-2, p. 4.

Instead, his claims focus on the loss of personal items caused by Defendants' failure to secure his property. ECF No. 1.[4]

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 11), and Hawes has filed an opposition (ECF No. 13), as supplemented (ECF No. 14).[5] The motion may be decided without a hearing. *See* Local Rule 105.6 (D. Md. 2016). For reasons set forth herein, Hawes' property claim will be dismissed.

**Background**

A.   **Plaintiff's Statement of Facts**

Hawes claims that on May 4, 2016, he was placed in a disciplinary segregation cell on staff alert status. ECF No. 1, p. 5. On May 13, 2016, the staff alert was removed and he was placed in a cell and provided a bed, mattress, and allowable property. *Id.*

While on staff alert status, prison personnel informed him that his personal property taken from his cell had been misplaced. He places the blame for the loss on Defendants Blake, Clayton, Arndt, and Murphy who, he claims, searched his cell and failed to inventory fully and store properly his personal property. *Id.*, p. 7. Among the lost items were various legal documents that Hawes maintains cannot be replaced, including his trial transcript, his

---

[4]   In his Statement of Claim (ECF No. 1, pp. 5-6), Hawes describes the conditions to which he was subjected when he was removed from his cell, placed on staff alert status, and temporarily housed without a bed, mattress, or clothing. Hawes does not elaborate further with regard to those conditions in his response and supplemental response to Defendants' dispositive motion (ECF Nos. 13 and 14). An August 1, 2016, letter from Dayena M. Corcoran, Commissioner of Correction, suggests that Hawes complained to federal and state officials concerning "staff abuse" on the staff alert tier (ECF No. 14-1). It does not appear that he intended to litigate this issue in the context of this lawsuit.

[5]   This Memorandum Opinion cites to pagination found in the court's electronic docket.

"homicide" file, and legal briefs. ECF No. 1-1, p. 4. Hawes states generally that the loss of these materials limits his access to the courts.[6] *Id*.

Hawes filed an administrative remedy procedure (ARP) grievance regarding the misplaced property. *Id*., p. 6. The ARP was found to be meritorious, and Hawes was offered compensation of $497.91, which he refused. *Id*., p. 2. He appealed the award to the Inmate Grievance Office ("IGO"), which referred it to the Office of Administrative Hearings ("OAH") for adjudication. *Id*., p. 6. After an evidentiary hearing, an administrative law judge found in Hawes' favor and awarded him $684.58 as compensation for the lost property. *Id*., p. 16. The Secretary of the Department of Public Safety and Correctional Services ("DPSCS") affirmed the award on July 19, 2017. *Id*., p. 18.

B. Defendants' Statement of Facts

On May 4, 2016, Defendants Arndt, Blake, and Clayton conducted a search of Hawes' cell, located on Housing Unit #6.[7] During the search, they found Hawes wearing a prohibited cell phone watch. A charging cable also was discovered. ECF No. 11-2, pp. 4-5 (Notice of Inmate Rule Violation); ECF No. 11-3, ¶ 4 (Blake Decl.); ECF No. 11-4, ¶ 4 (Clayton Decl.); ECF No. 11-5, ¶ 4 (Arndt Decl.). The three officers escorted Hawes to the dayroom to be strip-searched. ECF No. 11-2, p. 4. While in the dayroom, Hawes threatened staff and the prisoner

---

[6] Although he has presented his allegations in a cogent manner and provided exhibits relevant to his claims, Hawes has requested the appointment of counsel to assist him with this case. ECF No. 13, p. 3, ¶ 12. Hawes is a capable self-represented litigant. His request for appointment of counsel is denied, in accordance with *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987) and *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989).

[7] At the time of the search, Lieutenants Blake and Clayton and Correctional Officer II Arndt were assigned to the Investigative and Intelligence Division within the Department of Public Safety and Correctional Services ("DPSCS"). ECF Nos. 11-3, 11-4, and 11-5, Blake, Clayton, and Arndt Declarations. Lieutenant Murphy was the manager of housing unit #6. ECF No. 11-6, Murphy Declaration.

who had informed staff about the cell phone watch. *Id.* He received a notice of inmate rule violation for possessing the contraband and for threatening staff and other inmates, and was taken to Housing Unit #4. *Id.* Hawes was placed on administrative segregation pending adjustment on a level one staff alert due to his behavior, threats, and violation of inmate rules.[8] ECF No. 11-2, pp. 5-6, 11.

On May 13, 2016, Hawes' status was adjusted to level three and he received additional amenities, including all allowable property ordinarily given to segregation prisoners. *Id.*, p.15, 22. On May 16, 2016, Hawes' staff alert status was removed. *Id.*, p.16. Hawes later pleaded guilty to three rule violations and received ninety days in disciplinary segregation. ECF No. 11-2, pp. 9-11.

In their Declarations, Defendants Blake, Clayton, Arndt and Murphy aver they had no involvement with Hawes' personal property once the search was concluded, and were not involved with the inventory and storage of the property. Warden Foxwell likewise avers no involvement in the property inventory and storage.[9] All Defendants aver that they made no determination as to Hawes' housing status or assignments. *Id.*, Declarations.

---

[8] DOC regulations define staff alert status as a temporary custody status for retaining assaultive or aggressive inmates on disciplinary segregation who exhibit behavior that threatens the security and order of the institution or threaten harm to others. ECF No. 11-2, p. 19. Hawes remained on level one status from May 4 through May 12, 2016. *Id.*, pp. 13-14.

[9] Foxwell states he did not become Warden until January 4, 2017 (ECF No. 11-7, ¶ 2). This statement is disputed by Hawes, who has submitted an August 1, 2016, letter from the Commissioner of Correction, a copy of which was sent to Foxwell as "Warden-ECI." ECF No. 14; ECF No. 14-1. Hawes' contention that Foxwell was the ECI Warden at the time at issue appears correct.

**Standard of Review**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant to establish "beyond doubt" that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or

conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Having set forth the parties' claims and the appropriate legal standard of review, the Court now turns to the parties' arguments and assertions.

**Analysis**

    **A.    Motion to Dismiss**

Hawes states that the items lost during the search of his cell included family photographs and personal letters as well as legal documents which cannot be replaced.[10] He argues that prison personnel were grossly negligent and failed to follow regulations governing the inventory and storage of prisoner property, and contends that the compensation provided does not take into account all the property lost and is insufficient. ECF No. 13, pp. 1-3, ¶¶ 6-10; ECF No. 13-1, p. 2; ECF No. 13-5, pp. 2-4. Defendants move to dismiss Hawes' lost property claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 11, p. 8.

In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 540

---

[10] To the extent that Hawes claims the loss of transcripts and other legal materials has prevented him from filing a collateral attack on his conviction, the claim fails. Hawes was sentenced in Baltimore City Circuit Court to life imprisonment on August 26, 1993, upon conviction for first-degree murder. He did not prevail on appeal or by way of a petition for post-conviction relief. *See Maryland v. Hawes,* Case No. 193253004 (Balto. City Cir. Ct.), http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?; ECF No. 11-8 (docket sheet). The parties differ as to whether Hawes might obtain representation in the future from the Maryland Office of the Public Defender. *Compare* ECF No. 13, p. 3, ¶ 11; *with* ECF No. 11-1, pp. 5-6. Negligent interference with the right of access to the courts does not state a claim. *See Pink v. Lester,* 52 F.2d 73 (4th Cir. 1995); *Daniels v. Williams,* 474 U.S. 327 (1986). In any event, the prisoner must establish that the conduct deprived him of meaningful access to the courts. *White v. White,* 886 F.2d 721 (4th Cir. 1989). This cannot be established here, as Hawes has completed post-conviction avenues of attack on his conviction.

(1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland through the Maryland Tort Claims Act and Inmate Grievance Office constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982);[11] *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of property). Therefore, even if Hawes' personal property was intentionally destroyed – and nothing in the record suggests that it was – such a claim does not rise to a constitutional violation.[12] Hawes was afforded an opportunity to seek compensation for his lost property, and was ultimately awarded $684.58. ECF No. 1-1 , pp. 9-10, 18, 20. While nothing can replace the intrinsic value of personal items such as photographs and letters, Hawes was provided an adequate post-deprivation remedy. His property loss claim is subject to dismissal for failure to state a cognizable constitutional claim under § 1983.[13]

---

[11] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing Plaintiff's due process claim.

[12] In rejecting a prisoner's Fourth Amendment claim to an expectation of privacy in his cell, the Supreme Court stated that denying such a claim did not

> mean that [a prisoner] is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.' By the same token, there are adequate state tort and common-law remedies available to respondent to redress the alleged destruction of his personal property.

*Hudson,* 486 U.S. at 530-31.

[13] Because Rule 12(b)(6) provides a sufficient basis to dismiss this claim, the court declines to address Defendants' argument concerning collateral estoppel.

For these reasons, Defendants' Motion to Dismiss is granted as to Hawes' claim concerning the loss of property. A separate Order shall be entered in accordance with this Memorandum Opinion.


May 24, 2018                                             /s/
                                             DEBORAH K. CHASANOW
                                             United States District Judge